Harriett *v.* Ballas, Appellant.

Argued October 5, 1955. Before STERN, C. J., STEARNE, JONES, MUSMANNO and ARNOLD, JJ.

*Stephen D. Marriner,* for appellant.

*George I. Bloom,* with him *Bloom, Bloom & Yard,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, November 14, 1955:

On September 2, 1951, Mrs. Jeannette Harriett was a passenger in a Ford two-door automobile owned and being driven by Joseph Ballas at a high rate of speed in a southwardly direction on Route 68 through Forrest County. When Ballas arrived at a point in Jenks Township near the Veterans of Foreign Wars head-

quarters bordering Route 68, a car appeared on the other side of the road travelling in the opposite direction, whereupon Ballas applied his brakes with such vigor that the wheels locked, converting the vehicle for the moment into a sled which shot across the center of the highway to strike the other car now stationary and immobilized on its own side of the highway.

As a result of the collision, the passenger Mrs. Harriett suffered serious injuries. In the ensuing lawsuit she and her husband brought against Ballas, the jury returned verdicts in the sums of $15,000 and $2,000. The defendant moved for a new trial, which motion was refused; and from that decision in the Court below, an appeal has been taken to this Court.

The appeal is predicated on four grounds, which will be taken up seriatim:

1. *Photographs and alleged improper declarations.*

At the trial the wife-plaintiff produced the proverbial "before-and-after" photographs showing her as she looked prior to the accident and then as the world saw her, after the automobile collision wrought changes in her appearance and general health. She testified that the "before" picture, which bore on its reverse side a pencilled notation "11/28/51," was taken in January, 1951. Later she testified that she remembered the picture was made during the "big snow" of 1950, and she specifically designated that date to be November 28, 1950, which date was then substituted on the back of the photograph for the one originally noted there. We see nothing improper about this testimony. It was for the jury to decide whether the variation in date represented verity, and they apparently concluded the plaintiff told the truth in this regard.

The appellant's attorney urges that considerable harm was done to his case because the plaintiff, when asked by her counsel as to the extent of her pain, re-

plied: "It got bad enough that I thought I was going to do away with myself at one time." This statement was ruled out by the Court because the question which elicited it was a leading one. Plaintiff's counsel asked the question again but it was not answered. A condition witness called in behalf of the plaintiff testified: "One time I was there she threatened to do away with herself when she went home." The Court here cautioned the jury to disregard conclusions drawn by the witness. We do not see that the defendant's case was harmed in any way in this matter. It is common knowledge that people who are in pain speak loosely about doing away with themselves. Many persons make foolish remarks about death without desiring or intending to accelerate the inevitable final call. Juries are aware of this self-dramatization, often unconsciously and sometimes sincerely performed, and they are not apt to be misguided by words of necromantic import which lack the dark resonance of the tomb. We are satisfied that the Trial Judge's instructions corrected whatever misimpressions might have been conveyed by the ante-mortem, self-pitying lamentations.

Appellant's counsel maintains that a mistrial should have been declared because plaintiff's counsel put certain questions to a witness about skid marks on the highway, which skid marks proved to be inconclusive. Plaintiff's counsel was attempting to portray a feature of the mishap which was strictly within the framework of the event. That he left this part of the picture in the shadowy fog of uncertainty in no way prejudiced the defendant's case.

2. *Cross-examination of plaintiff's witness Westerberg.*

Floyd W. Westerberg, called by the plaintiff, testified to the speed of the defendant's car and to the fact that the driver of the other car, Marland Elder, brought his vehicle to a complete stop on his own side of the

highway. Defendant's counsel in cross-examination sought to question Westerberg if he had not asked a State policeman to "go easy" on Marland Elder. The Judge refused to permit this cross-examination. Marland Elder was not a party to the lawsuit. The record shows that the Trial Judge did not abuse his discretion in refusing this cross-examination.

### 3. *Question of defendant's license.*

The claims adjuster of the defendant's insurance company obtained from the plaintiff after the accident a statement which, in some respects, differed from her testimony on the witness stand. With regard to these discrepancies the plaintiff explained that she had not read the statement which had been prepared by the adjuster. She said further that the adjuster told her it was unnecessary for her to read the statement because it had been written up with the main purpose of saving Ballas's driving license. The insurance adjuster, a Mr. Lowe, took the stand and denied that he had made the remark attributed to him by the plaintiff. When plaintiff's counsel asked him: "Did you tell her that you just wanted a statement to protect Mr. Ballas on his driver's license, and that she certainly would not want to do anything to hurt him about his driver's license? Answer 'Yes' or 'No'". Mr. Lowe replied: "No, sir. To the best of my knowledge, Mr. Bloom, *if I may volunteer,* Mr. Ballas' driver's license was never in jeopardy." (Emphasis supplied.)

The Court struck out this answer as not being responsive to the question and appellant's counsel now urges that this ruling was in error. Whether Ballas's License was actually in jeopardy was not an issue in the case. The accident occurred on September 2, 1951. Mrs. Harriett's statement was taken on October 18, 1951. It is unlikely that there would be any public knowledge, within such a short period of time, as to

whether Mr. Ballas's license was or was not being re-voked. The only evidentiary issue created by the clash between the statement and the oral testimony of Mrs. Harriett was whether the insurance adjuster had made the remark that he asked the plaintiff to sign the statement in order to save Mr. Ballas's license. On this, Mrs. Harriett asserted an affirmative, Mr. Ballas a negative. The question of credibility was for the jury. The Trial Court did not err by excluding testimony on the collateral dispute about Ballas's license status.

4. *Plaintiff counsel's comment on insurance.*

While plaintiff's counsel, Mr. Bloom, was summing up his case to the jury, his adversary, Mr. Marriner, interrupted him. The record shows the following: "MR. MARRINER: Mr. Bloom, having argued that insurance is carried to protect your friends and having argued to the jury that that is the purpose of insurance, it being an improper argument, I move to withdraw a juror and continue the case. MR. BLOOM: If the Court please, that is not an accurate statement that he has put on the record as to what I said. I said that regardless of the fact there was insurance, if there was no negligence on the part of the defendant, there could be no recovery regardless of insurance. THE COURT: I don't think it is improper, and I will tell the jury that they are not to be influenced in the determination of the case by the fact there is insurance; so that the motion to withdraw a juror is refused. We don't think counsel has misquoted the question of insurance and the court expects to cover that in the charge and instruct the jury that the question of insurance is not to influence them in any degree." Later Mr. Marriner filed an affidavit in which he said that Mr. Bloom said: "On the other hand, we do not want you to be prejudiced in favor of the insurance company in this case because Mr. Ballas also bought insurance for the protection of

his close friends and relatives who might ride with him."

While there is some dispute between counsel as to Mr. Bloom's actual words, there is no doubt that the subject of insurance was introduced into the case by defendant's counsel, not plaintiff's. Defendant's counsel not only called as witness the claim adjuster of the insurance company but in his closing remarks he emphasized that the jury should not be influenced in behalf of the plaintiff because the defendant carried insurance. It would seem from the statements of counsel and from their briefs that defendant's counsel in his summation stressed the close friendly relationship between the plaintiff and the defendant and, among other things, argued against a plaintiff's verdict on that basis.

While, of course, the purpose of buying indemnity insurance is primarily to protect oneself from serious financial losses through adverse court verdicts, it cannot be gainsaid that a person of conscience is also concerned about seeing to it that no one who may be injured through his fault should go uncompensated. With that proposition as a premise, it would be anomalous indeed that, subjoined to the laudable desire to protect people the insured never saw before, he should wish to exclude from his largess persons he knows well, and whom he would want even less to hurt than strangers.

It cannot be said, on the basis that defendant's counsel properly argued that a verdict should not be brought against his client simply because he carried insurance, the jury should place an additional burden on the plaintiff simply because he happened to be a friend of the defendant's. While litigation frequently dissolves alliances, cleaves friendships, and destroys intimate relationships, it is still possible, and not even unusual, for opposing parties to a lawsuit to present

their respective contentions uncorroded by the acid of animosity and undistorted by the hammer of untruth. In any event, the agitated waters of insurance, stirred up first by defendant's counsel and then by plaintiff's counsel, were adequately calmed by the words of the Trial Judge, who said:

"In considering the first issue for your determination, whether the defendant was negligent and whether the negligence, if any, was the proximate cause of the injuries to the plaintiffs, you are not to be influenced by the fact there has been some reference in this case to insurance. You must disregard any reference to insurance or to any insurance company in your determination of liability, if any, of the defendant to the plaintiffs. The fact that the defendant in an action such as this is insured has not the slightest bearing on the issue of liability." . . .

"In considering the matter of damages, may I again caution you to disregard any reference to insurance in this case or to any liability on the part of any insurance company in the event that you decide the plaintiffs are entitled to a verdict. The presence or absence of insurance is not to be considered by you in determining what damages, if any, are to be awarded the plaintiffs, should you decide they would be entitled to verdicts against the defendant."

We see no justification for a new trial on any of the contentions advanced by the appellant. It is urged by counsel, however, that while no one of his complaints, standing alone, might warrant the granting of a new trial, the accumulation of complaints calls for a re-trial of the lawsuit. But since no one of the reasons advanced for a new trial possesses merit, we do not see how an accumulation of zeros can add up to more than zero.

Judgments affirmed.